Coleman, S.
This contest is based not upon general want of testamentary capacity, but upon the existence in testatrix’ mind of such insane delusions as directly affected the disposition of her property, coupled with a degree of undue influence on the part of Mrs. Zabriskie, which taken together invalidated this will. The contestant is Charles R. Bull, a brother of the testatrix, and her other next of kin are her two sisters, Mrs. Wheeler and Mrs. Zabriskie.
By her will, after making a few bequests of personal ornaments, household furniture and wearing apparel, the testatrix gives legacies of $200 each to all her nephews and nieces, including the children of Charles R. Bull; $2,000 to her niece, Carrie S. Zabriskie; $500 to the Orange County Bible Society; $500 to the American Bible Society; and the residue equally to Mrs. Wheeler and Mrs. Zabriskie.
The evidence fails to connect Mrs. Zabriskie with the making of the will, except by remote implication.
The alleged insane delusion is that the testatrix unjustly believed that the contestant had wronged her in the settlement of their father’s estate, and that this belief had so taken possession of her mind as to have dominated and controlled her in the disposition of her property.
Just in what particular she believed he had wronged her, floes not clearly appear, but it would seem to have been that in some way he had obtained more than his fair share of their father’s property, and that he had deprived her of certain privileges in the use of a horse and wagon, and in the garden, which she believed herself to be entitled to under her father’s will. As to the justness of this charge, I f.Trmk it can fairly be adduced from the evidence that, in his connection with the estate of his father, Charles R. Bull had only availed himself of his legal rights. Whether those rights gave him more than a fair share of the estate does not appear, but Miss Bull evidently believed that he had, and that he had dealt ungenerously and graspingly towards the other members of the family. In the eyes of outside and disinterested persons, she certainly made very much more ado about the matters of which she complained than their importance warranted; and to such persons she would certainly seem to have acted in a very unforgiving and unchristian manner for one of her religious professions. But, *836 ean it properly be claimed that ber mind was so affected upon this subject as to amount to insanity?
It is argued in support of the claim that her mind was so-affected that this delusion was not the only one which had found a lodgement in Miss Bull’s mind-—that her mind had become unsettled upon religious matters—that she was a religious enthusiast—had carried her belief to unusual extremes regarding trifling matters, and believed herself cured of bodily ailments by what is known as “the faith cure.”'
Miss Bull lived to attain the age of about fifty-one years. She was known as a person of rather feeble health-—was of' a very nervous and excitable temperament. In early life about the time of passing from girlhood to womanhood, on several occasions had suffered quite serious attacks, apparently in the nature of hysteria, during which her acts were-irrational. These attacks, however, were of short duration, and later she became a person sufficiently strong to ordinarily participate in the duties and pleasures of life in moderation. She was undoubtedly a person of marked mental-peculiarities, of more than ordinary business capacity, and in later years very active in her connection with religious, matters.
It is necessary to consider these facts and characteristics of Miss Bull in order properly to judge her conduct, for what might be in one person mere eccentricities and personal peculiarities might in another become evidences of insanity. Thus, in her case, we would naturally expect to find in her religious life the intense phases, personal activity, practical application of beliefs even in trivial matters, and also the not uncommon accompanying trait in such characters, decided inconsistencies. Hence her unforgiving feeling towards her brother.
An insane delusion is exhibited in the belief of', facts which no rational person would have believed, and the inability to be reasoned out of such belief (Matter of Tracy, 11 N. Y. State Rep., 103). After carefully considering all the testimony in the light of this legal definition of an insane delusion, I am unable to see in Miss-Bull1 s feelings and conduct towards her brother anything more than an intense dislike—perhaps hatred-—of him, which may have, and probably did, influence her in making her will, and though persisted in with a sort of feminine obstinacy, still I can see no reason for believing that her opinion of him could not have been changed at any time by evidence showing that she was mistaken in her judgment of his conduct in regard to her father’s estate_
_ Mow whether this dislike was justly or unjustly entertained is not, in law, material—for the law recognizes the fact that all are more or less influenced in the disposition of their property by their likes and dislikes, and it will not interfere even though natural claims are ignored for the *837 reason that, generally speaking, one may dispose of his own as he chooses. Of this the case of Clapp v. Fullerton (34 N. Y., 190), is a marked instance. In that case, the testator, late in life, many years after his wife’s death, came to believe from a recollection of things said by her while delirious and on her death bed, that she had been untrue to him, and that the daughter born to them was not his child; and, acting upon this belief, which was undoubtedly a mistaken one, he disinherited the daughter. Earlier in life, when his mind was healthy and vigorous, he had dismissed the delirious statements as having no foundation, but with lapse of time and waning mental powers he came to believe them, and changed the disposition of his property. In the opinion of the court, it is said, this belief “should be referred to weakness and credulity, rather than to insane delusions, ” and that ‘ ‘ the right of a testator to dispose of his estate depends neither upon the justice of his prejudices nor the soundness of his reasoning, * * * the law gives effect to his will, though its provisions are unreasonable and unjust.” “ Courts should not confound perverse opinions and unreasonable prejudices with mental alienations.” Seamen's Friend Soc. v. Hopper, 33 N. Y., 619. The recent Case of Tracy (supra) is another case in point. There the testator, an exceedingly dissipated man, made a very small provision, in proportion to his estate, for his only daughter, because of his dislike and hatred of her mother. _ The will was sustained, although conceded to be very unjust and notwithstanding the testator had undoubtedly been mistaken in regard to many matters about his daughter, because of the right of the testator to dispose of his property in this manner if he so desired.
I am of the opinion that the will of Miss Bull was legally executed; that she was of sound mind; that she was not unduly influenced by any person in the disposition made of her property; nor did there exist in .her mind any insane delusion which affected such disposition.
An order will, therefore, be entered, admitting the will to probate.